Our next case this morning, United States v. McCabe. Ms. Taman. Good morning, your honor. Good to have you with us, Ms. Taman. Thank you. May it please the court. I represent Robert McCabe, the appellant in this case. The jury instructions failed to accurately state the law on bribery in two important regards. First, under McCormick, a heightened standard of proof is required because the payments involved campaign contributions. Second, under McDonnell, this particular 23-year retainer-style agreement for prospectively for official acts as needed is no longer tenable under McDonnell. Mr. McCabe served for 23 years as the elected sheriff in Norfolk. During that period of time, he ran for sheriff, the elected position, on six different occasions. Each time after he won an election, he immediately began campaigning again, typically holding an annual golf tournament and buying ads in local papers, things like that. After trial, he was convicted on seven counts charging honest services mail fraud and three counts of Hobbs Act extortion under color of official right. The conduct charge spanned from January of 1994 all the way through until December of 2016. All of the crimes that were charged rested on the theory that Mr. McCabe, during his 23 years in office, accepted things of value, which were primarily campaign contributions, in exchange for the official acts prospectively as they may be needed. The honest services mail fraud and the requisite finding under Hobbs Act extortion both rest on bribery as it's defined in Title 18 United States Code Section 201. 201A being the definitions, 201B being bribery, and 201C being unlawful gratuities. The conducting of an election, the running for office, is a core First Amendment right. And because of that, in McCormick, back all the way in 1991, the Supreme Court said that there must be a higher standard to prove bribery when campaign contributions are at issue. In that situation, the government must prove that the agreement was explicit. In this case, the appellant, Mr. McCabe, moved pretrial to strike campaign contributions from the indictment, and he moved to dismiss the indictment for failure to charge an explicit agreement. The trial court had full briefing before the court, before the court decided that the only thing that was required in campaign contributions that was not required normally was that there needed to be a meeting of the minds. She then found that the requisite agreement could be either implied or expressed, and that you should look to the circumstantial evidence. The trial court before ruling considered McCormick, considered Evans, the case that followed a year later, and decided that the courts of appeals had not provided sufficient guidance on what explicit meant, and so she decided that an express agreement was not required, that the jury could consider just the circumstantial evidence. The court did not provide any other instructions as the court normally would, explaining to the jury what the requirements for an explicit agreement were. They didn't explain circumstances, they didn't even rely on what the Ninth Circuit had said, that the agreement needed to be unambiguous, it could not be vague. The holding of McCormick is clear. The court in McCormick said that political contributions are vulnerable under the Hobbs Act if they are induced by force, violence, or fear. The receipt of such contributions could also be vulnerable under the act as having been taken under official right, but only if the payments are made in return for an explicit promise or understanding by the public official to perform or not perform an official act. The court went on to explain that in such situations, the official is asserting that his official conduct will be controlled by the terms of the undertaking. Under Supreme Court precedent, the jury should have been instructed that in order to find McCabe explicitly agreed to accept the benefit, that he was agreeing that his official conduct would be controlled by the terms of the agreement. The court provided a number of bribery instructions after reading to the jury the speaking indictment that the government prepared in the case. After reading that speaking indictment, she told them three different times that the requirement of explicit did not mean express. She said that if it was a mixed motive, having a lawful motive was not a defense. And she said that if the act was actually lawful, desirable, and beneficial to the public, those were not defenses and they should not be considered. The courts of appeals that have addressed the question of what exactly explicit means have not been entirely consistent. In the Second Circuit, then Judge Sotomayor understood that explicit agreement required an express agreement. And apparently Justice Stevens understood that as well because he dissented from the majority in McCormick and he found that the majority understood this explicit agreement to be express. The Ninth Circuit in Carpenter held that it had to be clear and unambiguous and leave no uncertainty about the terms of the bargain. The jury instructions did not define an explicit agreement with sufficient clarity that ordinary people, including Mr. McCabe, could understand what conduct is prohibited. The only thing the jury was told is that an explicit agreement did not have to be expressed and that the explicit agreement did not have to cause him to change his position. Given these failings, the instructions did not adequately state the law. The Supreme Court, in the case of United States v. Sun Diamond Growers of California, had the purpose of exploring what intent was needed in order to convict someone of accepting an unlawful gratuity. And in that case, in the lesser offense where corrupt intent is not required, the Supreme Court held that the government must prove a link between the thing of value conferred upon a public official and a specific official act for or because of which it was given. It's that causality. Because of the bribe, then you will get this official act. A relationship between the two is really essential to the corrupt intent that's required in bribery. And as I said, the instructions were flawed, not just on the issue of the explicit agreement, but also because the government charged the retainer-style agreement that they used in the McDonald case here, and they ran it for 23 years, prospectively, for official acts as they may be needed. We contend that this theory of viability is no longer viable after McDonald. At trial, there was never any effort by the government to identify or to correlate any of the benefits that were received in exchange for official acts. They didn't feel any need to make any linkage or show any causality, and that's demonstrated by the fact that in the instructions, the court instructed a number of times there didn't have to be any linkage between them. In McDonald, this court accepted the government's retainer-style position and argument, and in reversing, the Supreme Court said no, there needs to be some specificity, there needs to be a specific official act. In the wake of that, the Second Circuit in Silver decided that you need to have acts determined. When it's an indeterminate acts as they may be needed, it eliminates the defining corrupt intent between the parties. It blurs that distinction between legal lobbying and corrupt intent of bribery. In the Eleventh Circuit, in the Spiegelman and the Roberson cases, the court held when a case implicates First Amendment concerns, as this one does, an agreement must be an explicit agreement such that no generalized expectation of some favorable action will do. Because this case involved campaign contributions and political in-kind donations, the court should have been instructed that there needed to be a specific intent to commit official acts, that his acts would be controlled. In instruction number 71 on the Hobbs Act extortion, the court made serious errors. The court found that comparing it to bribery, there did not need to be any quid pro quo stated in express terms. And as also was the case with bribery, she told them that a given thing of value need not be correlated with a specific official action, that things of value may be given with the intent to retain a public official's services on an ad-needed basis. So that as opportunities arise, the official would take specific official action on the payer's behalf. She told them then that it was not a defense that he would have done the lawful act anyway, and it was not a defense that it didn't cause him to change his position. These instructions were erroneous. When the jury is instructed, misinstructed, I'm sorry, when the jury is misinstructed on an essential element of the offense and permitted to convict a defendant on a lesser standard than required under the Supreme Court, the error cannot be harmless. Were there objections imposed to all these points that you're raising? The arguments were fully briefed in the pretrial motions. Were there objections? There were not objections specifically on these specific grounds. Were we reviewing them for plain error? No, Your Honor, because the pretrial rulings, in response to all of the pretrial pleadings to dismiss the indictment for fail to charge an explicit agreement, there were a number of pretrial pleadings filed like that, raising specifically McCormick and raising specifically McDonnell. The court issued a 48-page opinion on those pretrial motions. Nineteen pages of that order covers the issues raised under McDonnell and McCormick. So they set the law of the case. Once the law of the case is set, trial counsel knows you do not seek to relitigate. The judge has considered your arguments, the judge has ruled, and that's the law of the case. And the instructions were entirely consistent with the pretrial rulings. And the government proposed these instructions and the defendant didn't object? That is correct, Your Honor. So how is it preserved other than plain review errors, Judge King asked? First off, it was error because it was inconsistent with the Supreme Court precedent that was clear. And trial counsel understood that that was the law of the case, consistent with the pretrial order. And so trial counsel didn't object a second time during the charge conference because the court had already decided. The court had decided on what instructions would be given, decided on the law of the case. And so the pretrial motions in other cases have been held to preserve the issue for appellate review de novo, and that's our position in this case. If they're subject to plain error, you claim that that's satisfied? Yes, absolutely. You have a fallback position is what I'm asking. Absolutely, absolutely. Under plain error, you'd have to find that the error was harmless. And on this record, you cannot find that. The error harmed Mr. McKay because it allowed You're conflating standards. Plain error and harmless error standards are different. I understand the government's position to be that if there was any error, it was harmless, and therefore not subject to relief under plain error review. Under the third prong of Alano. Oh, I see you. We would submit, based on the time that's present here, issues two, three, and four based on the briefing. We do believe that in two there are constitutional issues raised when the court allowed two incredible witnesses to testify about hearsay that was merely office gossip from a deceased witness. Mr. McKay felt very strongly about having the opportunity to cross-examine that witness, and his right of confrontation was denied when that hearsay was admitted. Judge Allen wrote an opinion on that point. She did, Your Honor. That's the one you're talking about there? Yes. Okay. Thank you. Thanks for your rebuttal time. Mr. Cook? May I please report? On the jury instructions, this case involves an especially strong example of a failure to preserve an objection to the instructions. The pretrial litigation in this case, I think, harms rather than helps the defendant's case because it shows that defense counsel was aware of these issues about the standards for campaign contributions and an as-needed instruction. And then when the jury instructions were submitted, defense counsel did not submit an instruction that addressed these points. That's at Joint Appendix page 371. Then at the jury instructions conference, that's 3437, the defendant did not object on these grounds. After the instructions were read, which under this court's opinion in Hassan is the appropriate time to identify objections to the instructions, the court asked defense counsel, so we're good, and the defense counsel said, did not raise an objection. That's Joint Appendix page 3441. And then I think that the closing arguments themselves reinforce what was going on here, which was the defendant's theory of defense was that there was not an agreement, not a parsing of the particular nature of that agreement. And so defense counsel said that his goodwill instruction, which he received, was, quote, the center and, quote, essence, that's Joint Appendix page 3631 of his defense, which was that there simply was no agreement whatsoever in this case. It was a matter of friendship, and that's why the money was passing hands. And then as to campaign contributions in particular, in closing argument, defense counsel actually minimized the amount of campaign contributions. That's 3628 to 3629. And in that global context where you know about an issue, you go into the instruction conference, you tell the judge, I want this specific proposed instruction. The judge gives you that instruction, asks you if you have any other objections to the instructions. The defense counsel says, I'm good, and then has closing argument that is built around the proposed instruction that the judge decided to grant. That is at a minimum plain error and really in the realm of waiver. If this court were to analyze this. You're saying that in the realm of waiver because the response was, I'm good? Right. You think that triggers something even beyond plain error? Yes, and I wouldn't view that in a vacuum. I think, again, it's reinforced by the fact that there was pretrial litigation that demonstrated an understanding of these issues. And then there's a closing argument that seeks to build a case around the additional goodwill instruction that defense counsel received and became the essence of, I mean, those were his words, essence and center of his case. And so I think that that moves you out of the realm of plain error, which is just overlooking an issue, into this, I got what I wanted. And I wasn't mounting an argument about the finer points of how campaign contributions would play into this case. And turning to how these instructions might have been understood, the government, when it was making argument, specifically brought up the McCormick instruction. And that is Joint Appendix 3565 to 66, and then recited the jury instruction provision that as to campaign contributions, they must be made in return for an explicit promise or understanding by the official to perform or not perform an official act. And that is the McCormick standard. And then the government, in closing argument, illustrated it with Exhibit 162, which is Joint Appendix page 7558. And that is an email between the defendant McCabe and John Appleton. And in that email, it's very short, McCabe says, the food contract is up next year. And then in the very next sentence, he raises a request for contribution to his reelection campaign. As the government said, that is as clear an example as one could hope to have of documentary evidence of an explicit agreement of a campaign contribution for an official act. And the renewal of a food service contract, it's undisputed, is an official act in this case. And so that, I think, gets you, sheds light on how these instructions were understood, which is there was a special case for campaign contributions. That special case was satisfied because there were explicit agreements in this case. But speaking of plain error, is this a case, though, where the instructions are so out of kilter with McDonnell that they collectively are so sort of one-sided? That means it doesn't have to be expressed. They seem to be out of kilter with McDonnell. And you're saying, well, and I agree with you. It seems to be a strong piece that you pointed to that McCormick addressed from that document. But overall, the instructions seem to be way out of kilter with McCormick and McDonnell particularly in that sense. The instructions here have to be understood in the context of this case. Instructions are always built around the nature of the case. And here the official acts were both undisputed and narrowly defined around obtaining the contract, extending the contract, having COLA adjustments and waiver provisions. And all of those are the official acts at issue here. Under McDonnell, those easily meet the test. They are not materially different than in McDonnell, what the Supreme Court said, that deciding to provide state funding for research studies of their ANATA block would count as an official act. And then they said, of course, what was alleged in the McDonnell case did not constitute action on that particular official act because the government wasn't claiming that the governor had agreed to perform that official act of delivering the studies. So I don't think that it can be said that the McDonnell case in any way undermines the alleged official acts in this case. The defendant doesn't have an objection to the instructions on the official act definition. Now, how a as-needed instruction might apply on a different set of facts with somebody who the universe of what was the official acts in the case were not as well-defined, and frankly, in this case, what this sheriff could do for these out-of-state vendors who wanted contracts was pretty narrow. It's not like the case of a governor who's got very broad powers. He had a very focused set of powers that dealt with the specific undisputed official acts here. And I think that that also bears on how much the instructions really needed to elaborate on the intersection between an as-needed instruction and the range of potential official acts here. That adds some clarity to the point. Another point I would make is that I think it's an overstatement to say that McDonnell dramatically changed the nature of the agreement at issue in a bribery case. It was very much focused on the official act. And as to the agreement, there is a passage in McDonnell where the Supreme Court reaffirmed that the, quote, the agreement need not be explicit, which, of course, McCormick says you have to have an explicit agreement for campaign contributions. And I think that that word explicit wasn't just an accidental use by the Supreme Court in the McDonnell opinion. It was a term of art that, you know, they are well aware of. And so effectively, McDonnell, I think, leaves open that there is a difference in a campaign contribution case versus a non-campaign contribution, that the agreement standard is distinct. And this is not a case to explore how that distinction might play out because of the plain error standard or outright waiver that applies here. And so I don't think this court has to on these facts where what the defendant was doing was saying, I just didn't have an agreement. I'm not going to emphasize the campaign contributions. It was just friendship. These finer grains and where the official acts are undisputed, this is just not the case to try to make finer distinctions about what survives in an as-needed instruction after McDonnell. Now, I would concede that before McDonnell, courts in considering an as-needed instruction had in mind a far broader view of what counts as an official act. And so what you would be doing on an as-needed basis, what could count as an official act, was a much broader range of things. And so by tightening up what counts as an official act, necessarily McDonnell has affected the as-needed theory in that context. But again, in this case, the official acts that were alleged in the indictment, enumerated in the jury instruction, and discussed in arguments were unquestioned official acts, not close calls. And as the government said at one point in its closing argument, Appleton and Boyle, quote, knew exactly what they were after, taxpayer-funded contracts. That's what this case was about. It's not a close call on official act. And the as-needed instruction in this context is just a reflection of the fact that over two decades, the defendants were paying the, I'm sorry, the bribe payers were paying the defendant to get these contracts continued and renewed. And it's not a defense in a bribery case that you keep taking bribes and keep committing official acts in return for them. And so really the defendant is almost attempting to take the flagrancy of the bribery and the duration of it and turn it into a defense on these facts, and that really should not be attenable, particularly under what at least should be plain error review. If the court has no further questions, ask that you affirm, and we'll rely on our briefs. Thank you, Mr. Cook. Thank you. Ms. Taiman. Thank you, Your Honor. The first thing I want to address is the statement at the end of the charge conference where the court says, so we're good. I've been trying cases in the Eastern District of Virginia a long time, so we're good means are you ready to argue? Do you need a rest break? Is your client ready to go forward? We're good. That's a very different thing than saying. You said that didn't have anything to do with instructions. Is that your proposition? I mean, it could easily be construed that way, and that's certainly the way I construed it, so we're good. Like, we're ready to move on to the next thing. We're good to go. Ms. Taiman, I don't want to cut off anything of Judge King's question, as you want to say, because I have a different question, but I want to make sure you finish Judge King's question. I'm ready to proceed. Well, you know, it's been a long time since I've been on the court, almost 23 years, but I did a lot of criminal practice, federal and state court. But when I practice, I may be the dinosaur. Let me update me. The judge would say, all right, what do you propose to the instruction? You have a pile here. The government, they have a pile here. And then after you go through it, and the judge used to reach behind and say, this is what I'm going to give them, right? And then it's your time to say, well, Judge, I note my objection because you didn't give this one was in my stack, this one was in my stack, and the other one you said, my objection is noted because you are going to give the one that was in the government stack. Has that changed? That hasn't changed. But the speed with which it's done, especially in a complex case like this, has changed. Is it so fast that you can't say, note your objection to an obstruction that you disagree with? Particularly where you thought it was already preserved by the pretrial motions. Yes, it is. And you can see, Your Honor. Contrary to what we said in that Hassan case and a lot of other cases. And the rule says you're supposed to object even after the instructions are given. The way I read the rule, you have to object again. You have to give an opportunity to object before the jury can start deliberations. Preserve these things so the judge can get it right at the time if it's necessary. Even after they read them, that you need to be given an opportunity and they have an opportunity and take the opportunity to object. And Mr. Cook brought up that Hassan case. I remember that pretty well. At this point in time, the court had been in trial for 15 days. Four weeks. I'm good. I take it that the defense doesn't have any problems with the instructions. Good to go. I think it meant that we're not going to argue over the instructions. They had to argue at some length over the one instruction that the defense requested, which was the goodwill instruction. But if the client's going to get potentially convicted and get a whole lot of exposure to prison time, it's something that everybody needs to be careful with. I don't disagree with that. And I would say that the theory of the case was not just goodwill. Mr. McCabe took the witness stand. He testified in his own defense. He subjected himself to a day and a half of blistering cross-examination from the government's lead attorney. And the reason was because, as he said over and over and over again, I was never offered a bribe. I never accepted a bribe. It went to bribery as the essential basis for these charges and the lack of corrupt intent. Your client testified. It meant in his own defense. Yes. He made his position right out front with the jury. It went a couple days, right? Yes. And if the court had decided differently the pretrial motions, maybe he wouldn't have had to testify. If the court had made clear that they intended to instruct the jury that an explicit agreement needed to be expressed, maybe he wouldn't have felt the need to subject himself to that kind of cross-examination. May I ask you an example? And if you think this is too far, then you can say you have some pushback. But explicit required. Assuming we look at it, whether or not it was harmless. Mr. Cook just read an exhibit and connected with an example that he says is explicit. Do you agree that if you have this question here and you start talking about the next time for me to run again, is that explicit? Because I'm just trying to say express explicit. Do you think that's explicit? It's the government's best evidence out of a 12,000-page joint appendix. And what the government doesn't tell you is that it was very casual. It was if you're able to, that's great. If you can't, not a problem. And that's not explicit. Right, I see. But your position depends upon your view that the agreement needs to be expressed. It can't be explicit without being expressed. Is that right? I believe that that is the truest understanding of McCormick. But at a minimum, there needed to be an instruction that the agreement needed to be clear, unambiguous, not in any way vague. Otherwise, politicians, when they run for office and they accept campaign contributions, are in jeopardy of later being prosecuted for bribery. There have to be protections that are meaningful based on the important constitutional principles at issue here. So you would not require an express agreement? Yes, that is the defendant's position. But our fallback position is that there needed to be a definition. When the court is instructing the jury, they define the legal terms. They define what knowingly means. They define what intentionally means. And so we see this pattern of always defining the legal terms like explicit. And in this case, that was not done. And it needed to be done. And the court needs to provide guidance to the district courts. These instructions permitted conviction on conduct that an ordinary person might well understand to be lawful conduct. Mr. McCabe's conduct was not controlled by any agreement that he had with any contractor or anyone making donations to his campaign. And Mr. McCabe's actions were lawful and they benefited the city. There was no actual loss to the city because of anything that Mr. McCabe did in the 23 years that he served as the sheriff. So for these reasons, we ask that you vacate his convictions and that you remand it for a new trial. Thank you very much, Ms. Taiman. And I notice you're court appointed also. We really appreciate your work in this case. Thank you very much for it. We'll come down to Greek Council and then go to the final case of the day.
judges: Robert B. King, Roger L. Gregory, Joseph R. Goodwin